## Thompson *against* Milford.

A, in taking possession of a tract of land to which he was entitled, ran and marked the boundary lines of his claim, as he supposed, upon the ground, but which in fact embraced about twelve acres of an adjoining survey upon which B had made an actual settlement, which was afterwards consummated by patent. A, with the knowledge of B, cleared a part of the twelve acres, and fenced and occupied it for more than twenty-one years : *held,* that, by the statute of limitations, he was entitled to hold not only the land which he had cleared and fenced, but also the woodland which was embraced within the lines by which he had designated his claim.

The formality or informality of a notice to take depositions depends upon the rule of court, without the production of which, an exception to the opinion of the court below on the subject will not be considered.

[Thompson v. Milford.]

ERROR to the common pleas of *Butler* county.

This was an action of ejectment by James Milford against Henry Thompson, which involved the title to about twelve acres of land.

The facts of the case and the points raised are all distinctly stated in the opinion of the court.

*Purviance*, for plaintiff in error, as to the rejection of the depositions, cited 6 *Watts* 456 : and as to the statute of limitations, 3 *Watts* 72 ; 3 *Watts* 205.

*Pearson*, for defendant in error, on the first point, cited 5 *Watts* 323 : and on the second, 6 *Smith's Laws* 64 ; 1 *Serg. & Rawle* 111 ; 7 *Serg. & Rawle* 129.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned is a bill of exceptions to the opinion of the court below rejecting the depositions of Samuel and David Hunter respectively, and sustaining the objection taken to them by the counsel for the defendant in error, who was the plaintiff below, that the notice given to the latter of the time and place of taking them was not signed by the former or his counsel. The rule of the court below, regulating the taking of depositions of witnesses has not been produced ; and without having it before us, it would be improper in us to decide, that the court had admitted these depositions erroneously, though it may be that they were not taken in conformity to the rule of the court on the subject ; but this latter cannot be presumed. The party alleging the error ought to have shown it, by producing the rule and pointing out some fatal departure from it ; otherwise we are bound to presume that the court decided correctly. This error therefore is not sustained.

The second and third errors embrace the same matter, and raise a question of some importance, upon the solution of which the title to the land in dispute here would seem to turn.

These errors are exceptions to the charge delivered by the court to the jury. The plaintiff below, and the defendant there claim and hold, in severalty, two adjoining lots of land, consisting of what are called the donation lands, lying within Butler county. Lot No. 274, containing one hundred and ninety-three acres and one hundred and thirty-eight perches, is claimed by the plaintiff below. It, however, was never drawn ; and, being a donation tract, was not liable to be taken up by settlement, though, in fact, it was settled by those from whom the plaintiff below derives his claim in the autumn of 1802. By an act, however, of the legislature passed the 26th of March 1813, 6 *Smith's Laws* 64, undrawn donation lands, settled three years previously thereto, which should remain undrawn on the 1st day of October following the date of the act, were directed to be granted to the settlers on certain conditions ; and the first settlement thereon was thereby declared to give an inception of title to the per-

[Thompson v. Milford.]

son making it.  Until March 1813, the title, both legal and equit-
able, of this lot therefore remained in the commonwealth; but after
that, or at least after the 1st day of October following that date, a
pre-emption right to it became vested in the owner of the settlement
at that time, under whom the plaintiff below now claims.  The
defendant below claims the donation lot No. 273, containing two
hundred acres, in right of the donee of the state, to whom a patent
was granted therefor in due form.  The defendant below took pos-
session of this lot in June 1802, and, by means of a surveyor, had the
lines thereof retraced, as he supposed, and distinctly marked.  In
doing this, however, it would seem that, in consequence of the
courses, as set forth in the patent, calling for boundary lines at right
angles, and parallel to each other on opposite sides of the lot, when
in truth they happened to be somewhat variant from this as marked
originally on the ground, he took in part, forming a triangle, of lot
No. 274, containing about twelve acres, which is the land in contro-
versy.  From the evidence, it appears that the lines, as run and
marked by the defendant below in 1802, were, from that time down
to the commencement of this action against him in February 1837,
regarded and considered by him as the boundary of his right and the
extent of his possession.  In making all his improvements, and in
clearing, cultivating and fencing the land within his claim, he seems
to have had a reference to these lines as bounding his claim and
the extent of his possession, and to have been governed by them.
More than twenty-one years before the commencement of this ac-
tion, he had actually cleared and fenced six acres beyond what is
considered the original boundary of his lot, but still within the limits
marked by himself in 1802.  The line, as marked by himself, be-
tween him and the plaintiff below, according to the evidence, was
known to the latter and respected by him as the boundary of the
defendant below, and all the land lying on that side of it, where the
latter resided, as being in his exclusive possession.  That the defen-
dant below had taken the actual possession of it as completely as the
nature of the land itself would admit, cannot well be doubted: he
at least took the possession of it in the usual way that woodland is
taken possession of, by moving upon it with his family, making it
the place of his residence, having a survey made designating by
marks on the ground the extent of his claim and his possession;
thus rendering them visible, and thereby making them known to
every one in any way interested.  And it appears in this case that
such was the effect; for the plaintiff below had full knowledge of the
lines as run and marked by the defendant below, and that the latter
was in the possession of the land included within them.  It cannot
be said or even pretended that the possession thus taken by the de-
fendant below was consistent with the title of either the common-
wealth or the plaintiff below.  Nor can it be alleged that the defen-
dant below has ever been out of the possession of any part of the

[Thompson v. Milford.]

land so taken by him from that time to the present, or that he has in any way acknowledged the right or claim of the plaintiff below to it. Neither is there any ground for saying that they both claim under the same title, so as to make the possession of one, by construction of law, the possession of the other. Nor is it possible, from the evidence, to imagine that they had any thing like a mixed possession of the land in controversy. On the contrary, the possession of the defendant below appears to have been at all times exclusive, and must therefore be considered as adverse, not only to the plaintiff below, but to all the rest of the world.

The error into which the court below seems to have fallen is, either that the defendant below, being a trespasser originally, as to the land in dispute, as no doubt he was by entering on it, could acquire no right thereto by virtue of the statue of limitations further than he actually cleared or inclosed (meaning, I presume, by a fence or something of the kind) ; or that the defendant below and the plaintiff there were to be regarded as claiming the possession under interfering titles; and as the defendant below claimed under a title which did not cover the land in dispute as he supposed it did, while the plaintiff there claimed under one that did, the possession of the land, not cleared or inclosed twenty-one years before the commencement of the action, was therefore to be referred to him who had the right, and consequently considered as being in the plaintiff below. It is clear that the parties never stood precisely in this latter position to each other. For although the plaintiff below claimed the whole of lot No. 274, yet until shortly before the commencement of this action he expressly, according to the evidence, confined the limit of his claim as also that of his possession to the line run and marked by the defendant below, excluding the land in dispute from his possession and thus leaving if not giving it to the defendant below. The possession of the latter thus conceded to him, or at least acquiesced in by the plaintiff in error, he continued to hold and enjoy exclusively from the year 1813, when the commonwealth parted with the equitable title to the land, to the present time, by exercising acts of ownership over it, in clearing and fencing part thereof, and using the residue as woodland upon a farm is generally used, for obtaining therefrom rails, fuel, &c. for the benefit of the whole as a farm. So that the possession of the land in question by the defendant below would ever seem to have been actual, exclusive and adverse to the plaintiff below and those from whom he derives his title for a period of upwards of twenty-three years before the commencement of this action.

Then as to the defendant below being a trespasser, and therefore only entitled, by force of the statute of limitation, to as much of the land in controversy as he had actually cleared or inclosed by fence or the like twenty-one years anterior to the commencement of this suit ; though this may be true as a general proposition, yet there are many exceptions to it, because clearing or inclosing land by

VII.—2 N*

[Thompson v. Milford.]

means of a fence, paling or wall is not the only mode by which an intruder entering thereupon without colour of title may take actual and exclusive possession thereof. If he enters under colour of title, it is admitted upon all hands and was so laid down by the court below, as where he enters under a deed of conveyance containing a specific description of the land by metes and bounds, believing that he has a title when in truth he has none by it, he, by living upon it and occupying it in the customary way, will be considered as in the actual, exclusive and adverse possession of all the land lying within the limits mentioned in the deed from the time of his entry. Now a deed of conveyance from one who has no interest to pass by it, though recorded, cannot be regarded as either actual or constructive notice to any body of the extent of the possession that may be taken under it; no person is bound to take notice of or know any thing about it. But the party having taken possession of the land, believing he had a right to do so under it, it is therefore, when produced, considered evidence of the extent to which he meant to take possession and renders the possession itself commensurate with such intent. Then take the case of an intruder who enters without such deed or colour of title but accompanies his entry and taking possession with an actual survey of the land, designating, by visible marks on the ground, the courses and limits thereof: is it not much stronger and more unequivocal evidence of his intention as to the extent of the land that he means to possess and hold, than his entry, without more, under a deed which passed no interest? Besides, I would ask, is it not more than evidence merely of his intention to take possession of all the land included within the survey so made by him; is it not *ipso facto* an actual taking of the possession of the whole of it, where he continues to reside upon it from that time on with his family, making it his place of abode and occupying it as a farm? It is in truth as much a taking of the actual possession of all the land embraced within his survey as if he had built a fence around the whole of it. And certainly less has been said to be evidence sufficient of an actual adverse possession having been taken. In Royer *v.* Benlow, 10 *Serg. & Rawle* 306, Chief Justice Tilghman says, " there may be cases in which a jury might well presume an actual ouster, although the person who had the right was not *excluded* by *inclosure* or *cultivation.* I say inclosure *or* cultivation, because *continued cultivation without inclosure* would be an *exclusive* possession. Wherever the person who has the right confesses himself to be out of possession, the act of limitation runs against him, because there is sufficient evidence of his being ousted, although the land be not inclosed by his adversary. So without actual confession a man may show by his conduct that he considers himself out of possession. If one claiming by warrant and survey omit to pay any part of his taxes for twenty-one years, and suffer one who has entered *without title* and settled on the land to pay the whole taxes during that whole period, the jury may presume that he was

[Thompson v. Milford.]

ousted, and he will be barred by the act of limitations. So if he suffers his adversary, who has *designated* his claim to *part* of the tract by *marks on the ground*, to pay the taxes for that part for twenty-one years, he may be presumed to be ousted *pro tanto*." See also pretty much to the same effect and still farther, per Chief Justice Gibson in M'Call *v.* Neely, 3 *Watts* 71, 72, 73. Now here the defendant below not only designated his claim and possession by marks on the ground including the land in dispute, but cleared and inclosed part thereof after settling thereon with his family, and continued to cultivate it for a period of more than twenty-one years after the grant by the commonwealth, whence the plaintiff below derived his claim, and before he brought this suit. Not only so, but the plaintiff below and those under whom he claims, with a full knowledge of the extent of the claim and occupation of the defendant below, would seem to have acquiesced in it during the whole of that period. But it is said that the defendant below took possession of the land in dispute under a mistake, believing it to be within the original lines of the survey of lot No. 273, when in fact it was part of lot No. 274; and that the acquiescence of the plaintiff below and those under whom he claims arose also from the same mistake on their part. But surely the mistake of the defendant below as to this cannot alter or change the nature or character of his possession more than it can the fact of his having it. It is impossible to conceive how it can make it otherwise than adverse to the claim of the plaintiff below in every point of view that can be taken of it. He certainly never consented to hold the possession in trust or for the use of any other than himself exclusively. And even if. he were to be converted into a trustee, by mere operation of law, without his consent, it would not prevent the statute of limitations from running in his favour. But upon no principle can he be considered in the light of a trustee, either upon the ground of consent or fraud; for both are out of the case. He took possession of the land in dispute, as would seem from the evidence, believing it firmly to be his own, and ever held and possessed it exclusively for his own benefit, without any objection at least, if not a perfect acquiescence on the part of his adversaries, until near the time of bringing this suit. Who can doubt for a moment that the defendant below, upon the strength of his possession, could not have maintained trespass *quare clausum fregit* against a third person for having entered upon the land in dispute? And if he could, it could only have been, before the twenty-one years were up, because his possession of the land was actual and not constructive. Seeing this might have been done by him, it is clear that the statute of limitations must have been operating upon his possession of the land, as it is wholly irreconcilable with the right set up by the plaintiff below. The court, therefore, erred in not instructing the jury that, if they believed the evidence, the defendant below was protected, and had acquired a right to the land in dispute by the statute of limitations. The de-

[Thompson v. Milford.]

sign of this statute was to quiet men in their possession of real estate as their own, after a lapse of twenty-one years, and consequently to preclude all inquiry as to title or right beyond that period. Under the provisions of the statute, the twenty-one years' possession was to supply the want of that, so that it was perfectly immaterial whether the party in possession entered with or without title, or colour of title, except that the latter may supply the want of title in furnishing evidence to the extent of the possession he intended to take. It is the duty of courts to carry into effect the design of the statute so far as they may be able to discover it; and to make it answer, as the legislature doubtless intended it should, the common and ordinary intent of men in taking adverse possession of real estate, so that they should be protected therein after a lapse of twenty-one years. It ought not to receive what might be thought to be an artificial construction, but such as will best meet the common views and understandings of mankind generally in practical life. Hence if it be not made to give repose to the man who has taken possession of land by settling upon it with his family, claiming it exclusively as his own, designating also the extent of his claim and possession by marks made on the ground, and continuing to occupy the whole thereof in the usual and customary manner for a period of twenty-one years, the great object of the legislature will not be met nor carried into effect.

As the judgment of the court below must be reversed for the second and third errors, it is unnecessary to say any thing about the fourth, which is an exception to the verdict on the ground of uncertainty; because this error, if it be one, may be avoided on the next trial.

Judgment reversed, and a *venire de novo* awarded.