## WESTERN DISTRICT, PITTSBURGH.

## Ament's Executor *versus* Wolf.*

1. In cases of interference of lines, "enclosing and cultivating part of the interference, and using the residue as adjacent woodland is customarily enjoyed, is actual possession of the whole."

2. In cases of interference of lines, the possession which the law imputes to the real owner, be it actual or constructive, is ousted by enclosing and cultivating part of the interference, and using the residue as adjacent woodland is customarily enjoyed; and after the statutory period the title is changed.

3. The case of *Wolf* v. *Ament's Executor*, *ante*, 150, commented upon and approved.

ERROR to the Court of Common Pleas of *Westmoreland county*.

Ejectment by plaintiff in error, for forty acres of land in Franklin Township.

This case was once before in this court, brought by the other party; a report of which will be found, *ante*, 150.

The plaintiff in this case is the executor of Anthony Ament, deceased, to whom power was given in the will to sell. Ament claimed under Euphan Moorhead, the warrantee. On the 26th June, 1786, Euphan Moorhead obtained a warrant for three hundred acres, including an improvement interest from 1st of March, 1776, on which a survey was made on 24th of May, 1793, which embraces the land in dispute. The title of Moorhead in 1830 was vested in Anthony Ament by purchase, who at that time took the possession and continued it till his death and by those claiming under him ever since. The landlord of the defendant owned a tract of land adjoining the Moorhead survey, called the breast-work farm, upon which his tenants lived for sixty or seventy years, between which tracts there was no interference, but bounded by each other. In 1788, Eli Coulter, the owner of the breast-work tract took out a warrant for forty acres, and had a survey made on it inside of the Moorhead survey, and along the line between the Moorhead and the breast-work survey. This survey was never returned. In 1799 or 1800, the tenants on the breast-work farm cleared over the line of the Moorhead survey about five acres, being an extension of the field on the breast-work place, and continued to occupy it as part of the field ever since. No part of the land in the survey on the forty acre warrant was ever fenced, except the five acres, nor was there any other improvements on it up to the time of the bringing of this suit, nor was there ever any residence on any part of it by the owner of the forty acre warrant or his tenants. In 1816, Moor-

* This case was of October Term, 1857, but was decided at the May Term, 1859.

head leased his tract to Wigle, who made considerable improvements. This possession by Moorhead's tenants was kept up till 1830, when he sold to Ament, by whom, and those claiming under him, possession has been kept up ever since.

The defendant now claims not only the five acres cleared, but all the unimproved land on the Moorhead survey, which is embraced within the line run for the forty acre warrant, by virtue of the Statute of Limitations; and whether or not this defence will avail him is the question in this case.

On the trial, plaintiff's counsel requested the court to charge:

"That the evidence in the case shows that the tenants of Moorhead entered on the tract of land embraced within his lines in 1816 or 1817, and continued to reside thereon till 1830, when he sold to Ament, and Ament and his heirs have continued the possession since; that under these circumstances, the survey made by the owner of the breast-work tract, and extending his clearing over the line of the Moorhead survey to the extent of five acres in 1799, and such use of the woodland as he has proved, will not protect him as to any part of the land in dispute, except that which was cleared and cultivated by him for twenty-one years before suit brought, and the plaintiff is entitled to the residue."

The court, BUFFINGTON, P., instructed the jury, inter alia, as follows:—

In answer to the point:

"We decline to instruct the jury as requested in this point, and say to the jury, that if the defendant or those under whom he claims, entered on the land in dispute under a colorable title or under the warrant of 31st March, 1788, by clearing land amounting to some five acres, and used the residue of the land in dispute for timber, and cut and used it for fencing or other purposes, up to the boundaries of the land in dispute, and used and occupied it as farmers usually occupy their woodland—and this possession of the clear land and use of the woodland was continued, and exclusive for twenty-one years—such possession would give title by the Statute of Limitations, notwithstanding there was no actual residence on the part in dispute; and it is immaterial whether the timber cut on the land in dispute was used on that land entirely, or partly there and partly on the residue of the land."

And in the general charge:

"Where there is an actual, notorious and visible occupancy on the land in dispute by the younger claim, and thus displacing the constructive possession of the elder title, the question is, how far this actual possession extends. Is it confined to the parts actually fenced and cultivated, or does it extend to the limits of the colorable claim? There being a notorious possession on part, so as to

[Ament<sup>s</sup> Executor *v.* Wolf.]

apprise the owner that he was disseised, it becomes then a question as to the extent of the actual possession on the one hand and the disseisin on the other. If the holder of the younger claim takes actual possession of a part of the interference under a colorable claim to the whole, and does claim to hold and possess the whole, and fences and cultivates a considerable portion, as in this case, five or six acres, and occupies and uses the woodland as farmers usually do, by cutting timber for rails, fire-wood, buildings, &c., as needed, and continues thus to use, occupy and claim for a period of twenty-one years adversely to the owner, the court are of opinion that this is such an actual possession of the whole, as would displace the constructive possession of the owner, and would be available to protect the occupant under the statute."

Verdict for defendant.

The answer to the point and part of the charge above given were the errors complained of.

*Foster* and *Marchand,* for plaintiff in error.

In this case the naked question is presented whether, one residing on his own tract of land can by a survey or marking lines within the boundaries of an adjoining survey, clearing over five or six acres, and claiming to the marked lines, but without residence on any part of the adjoining survey, hold the land up to the lines marked, although unimproved, as against the owner of the adjoining survey in the actual possession of his tract. In the earlier cases it was well settled, that an intruder could only claim the land actually enclosed and cultivated for twenty-one years, as against the real owner out of possession; but the Statute of Limitations has received a more liberal construction by the Supreme Court; and it is well settled now that the entry of an intruder on unseated land, either with or without color of title claiming up to known boundaries, and an actual occupancy of part, and use of the whole for the ordinary purposes of farming, continued for twenty-one years, claiming adversely, will give title to the whole under the statute. Such an occupancy of part gives the intruder the constructive possession of the whole. An entry under color of title amounts to nothing more than evidence of the extent of his claim, and places him precisely in the situation of an intruder, who has marked the boundary of his claim at the time he enters.

These principles properly applied, will not now be questioned. The attempt in this case is to extend the principles before stated to a class of cases, to which they have never been applied by any adjudged case, and to which, if they are extended by this court, will announce a principle at once new and startling to the profession. In all the cases on this subject, where an intruder has been allowed to hold against the real owner more than the land

[Ament's, Executor *v.* Wolf.]

actually cleared and enclosed for more than twenty-one years, by constructive possession, the owner was not in the actual possession of any part of his land.  If the owner of the survey before the expiration of twenty-one years, from the time an intruder had such occupancy as would, in the absence of actual possession by the owner, have ousted him, enters, builds, and improves the land, how does the case then stand?  If he is in the actual possession of part, he is in the constructive and legal possession and seisin of the whole, and can only be disseised, by actual occupancy of an intruder by clearing and cultivation.  It cannot be doubted that the ground on which an intruder is allowed to hold more than he actually encloses is, that he is said to be in the constructive possession of more, or up to the boundaries to which he claims,—in the meantime the owner takes possession, and the moment he does so, his possession extends to the boundaries of his survey, and here the conflict commences; and the question to be settled is, whether the constructive and legal possession and seisin of the owners will prevail, or give way before the same kind of possession by the intruder.

If the real owner is in possession of his land, what must he do in order to protect his right to his unimproved land from intruders, who may run lines round it? he is not compelled to cut his timber and use it at all parts of his farm, from an apprehension that others by committing trespasses on it for a series of years, may after twenty-one years challenge his right.  Suppose the defendant in this case had laid his warrant, so as to embrace the whole of the Moorhead survey, and would occasionally cut timber on it at different points, the real owner would be compelled to do the same thing, or risk the loss of his woodland, and the result would be that the owner in possession could only hold that part of his land which he had actually cleared and cultivated, against the claim of an intruder, to hold it by a constructive possession resulting from the commission of trespasses.  If the law is so, you will compel the owner to do more to save his land than you would require an intruder to do, to take it away.  I think the doubt expressed by Judge Rogers, in the case of *Porter* v. *M'Ginniss*, 6 W. & S. 502, whether a non-resident disseisor can acquire title to any more than he has actually cleared and enclosed for twenty-one years, brings the mind to the conclusion, that the only fair construction of the statute would be, that none but actual residents on the land can acquire by title constructive possession.  In this case, the Moorhead title from the commencement is conceded to be the better one, and must prevail unless it has been divested in some way recognized by the law.  This they propose to do, by showing unofficial lines run round a portion of his woodland by an adjoining owner, who, in 1800, extended one of his fields over the line, so as to embrace five acres,

and an occasional use of the woodland within his line for the use of the farm he lived on, and claims to the whole. What the effect of this would have been, if the owner of the Moorhead survey had not taken possession, it is not necessary to argue, because in 1816, Moorhead put his tenants on his tract, and by them and those claiming under him, it has been occupied ever since, accompanied with valuable improvements, by which we allege the title of the defendant to any part thereof by his constructive possession is entirely destroyed. One who is in the actual occupancy of two adjoining tracts across which lies another tract surveyed under an elder warrant, is entitled by the Statute of Limitations to hold all the land within his own lines, "*if the owner of the elder survey is not in actual possession of his tract.*" 7 Harris, 305.

If one has possession by enclosure of part of a tract of land, which has known boundaries, and at the same time claims the whole, this is sufficient possession of the whole, and the Act of Limitations will operate in favor of the whole, if no other person has possession in law or fact, but if another has possession of part of an adjoining tract where lines interfere, the law adjudges the possession of the unenclosed part to be in him who has the best right, and the Statute of Limitations will have no effect, except as to the part actually enclosed. *Cluggage* v. *Duncan*, 1 S. & R. 111.

*If the rightful owner is in the actual occupancy of a part of his tract by himself or tenant, he is in the constructive and legal possession and seisin of the whole,* unless he is disseised by actual occupation and dispossession. Who then is in possession of the part not occupied by enclosure by either? the man who has no right but by disseisin of a part, or he who is in the actual occupancy of a part, and the rightful owner of the whole. In this kind of mixed constructive possession, the legal seisin is according to the title. *Potts* v. *Gilbert*, 3 W. C. C. R. 475. Where there is survey against survey, and the possession is in *equilibrio*, the law presumes the title for him who has the right. 1 Jones, 513.

Actual possession of part of a tract of land of which the lines are marked under claim of title to the whole, gives such possession of the whole as will bar the right of the real owner by the Statute of Limitations. But an entry by the owner on any part of the land, within the bounds of his own survey, is an ouster of the adverse claimant as well of the part actually occupied as that in constructive possession merely. *Altemus* v. *Long*, 4 Barr, 254; *Wright* v. *Guier*, 9 Watts, 172.

*Cowan* and *Coulter*, for defendant in error.

The answer of the court below to the point of plaintiff is not erroneous, because in following the hypothetical view of the case

[Ament's Executor *v.* Wolf.]

put in the point, the learned judge says, "and (if) this possession of the clear land, and use of the woodland was *continued and exclusive* for twenty-one years,—such possession would give title by the statute," &c.   Here, it will be observed, that the court put the case to the jury according to the indisputable law of all the cases, and as it was ruled in this very case when here before. The question then was, whether, suppose it admitted, (as it was admitted,) "that the defendant had cleared a portion of this interference under his colorable title to the whole, and that he had openly, notoriously and exclusively used the woodland of the residue," for some twenty-five years, "without any entry or suit having been brought by plaintiff, to restrain him in his trespasses or to assert his own title to the land," that this would protect the defendant under the statute, as to the woodland thus used.

The court below held it would not, and directed a verdict for the plaintiff, for all except the part cleared and enclosed.   This was assigned for error in this court, and being sustained, the judgment was reversed, and a *venire de novo* awarded.   *Ante,* 150.

The question was one of fact.   Was the plaintiff out ?   Was the defendant in ?   And whether the affirmative of these is admitted by the plaintiff as in the former case, or whether the defendant proves it and the jury find it as in this, is all one, and the same law is applicable.   If the possession of the clear land, and the use of the woodland was *exclusive* for twenty-one years, before suit brought,—certainly it cannot be denied but that the bar of the statute intervenes to protect the whole, because the owner is there brought within the very terms of the law which forbids his recovery. How is he to allege a *seizure or possession* in himself, if it be shown that for more than twenty-one years before suit brought he was *excluded* from it by another ?   There is no exception in favor of his woodland in the statute, any more than there is of his fields,—all are upon the same footing, and under the same ban.   But his counsel allege that it is impossible to exclude him from his woodland by any thing less than enclosure and cultivation; that his constructive possession, although a fiction, is stronger than our user of his woodland, and, therefore, cannot avail us. To this we answer that no fiction can be stronger than a fact, and if our occupation and user of the land in dispute, was potent enough in the opinion of the jury, to show, that notwithstanding the presumption of seizure and possession in his favor, he was ousted for more than twenty-one years, then the statute protects us.   This presumption of possession, is made by the law in his favor, only in the absence of proof of actual exclusive possession in another, and whenever that proof is made, no matter how, the presumptive fiction is useless and disappears.

In considering the assignment of error to the charge of the court below, the final clause must be taken in connection with the

[Ament's Executor *v.* Wolf.]

part excepted to, because the court again reiterated to the jury:
" Whether there was such occupancy in this case, and whether
continuous and exclusive and adverse, is a question for the jury.
If there was not such a possession as we have defined, then the
plaintiff's right of possession and his constructive possession, was
not taken away, and having the elder and better right he would
be entitled to recover."

Now it is impossible that any thing could be put more fairly,
and it is impossible, we say further, that any words or concatena-
tion of words could convey to the jury, more precisely, the very
law laid down by his Honor, Justice Lowrie, unless, indeed, the
very words used by his Honor, had been repeated, and it would
be perhaps impertinent in us, if we were to attempt to add any
thing to their force.

The opinion of the Court was delivered by

WOODWARD, J.—We thought the only question in this cause was
effectually decided when it was here before, but the counsel have
brought it up again and have appealed to us very earnestly to re-
verse our former decision.   We have no right to complain of this,
for it is no more than the losing party in an ejectment has a
right to do.   Besides, if our former judgment were sound it will
bear to be reviewed, and if it were not sound it is well for us
to have an opportunity to correct it in the very case in which
it was pronounced.

It is the case of clashing surveys.   The interference is about
forty acres.   Both parties have been long in the actual posses-
sion of their respective surveys, but the junior warrant-holder
cleared and cultivated a field of about five acres within the in-
terference, and has had possession of that and uninterrupted
use of the rest of the interference, as woodland adjacent to farms
is commonly enjoyed, for more than twenty-one years before suit
brought.   The question is, whether the Statute of Limitations will
protect him.   That he has acquired a right to so much as he en-
closed and cultivated is not denied, but it is denied that he
has acquired title to the woodland.

Judge Lowrie's opinion, when the case was here before, ad-
verted to the early decisions in reference to the extent of in-
truder's claims under the Statute of Limitations, and contrasted
them with the later cases which have more carefully and clearly
defined what is actual occupancy, and these he declared do most
certainly decide that such a use as the defendant made of the
woodland, in connection with his improved land, is actual and
not constructive possession.

The cases referred to, especially Judge Kennedy's elaborate
opinions in *Thompson* v. *Milford*, 7 W. 443 ; *Cresswell* v. *Alte-
mus,* Ib. 580 ; and *Lawrence* v. *Hunter*, 9 W. 77, will be found

fully to justify the above conclusion. In *Alden* v. *Grove*, 6 H. 388, the result of the authorities was stated in these words: "Since the case of *Cresswell* v. *Altemus*, and those which follow in its wake, it is vain to deny that the intruder's use of woodland, as woodland is ordinarily used, is, in the eye of the law, actual possession of it, as truly and effectually for the purpose of the Statute of Limitations, as his cultivation of fields is actual possession of them."

This is very definite language, and unless its force is to be greatly abated, it leads irresistibly to the conclusion that the enclosed field in this interference was no more an actual possession than the woodland, used as it is admitted it was used. But if the intruder, or younger warrantee, had actual possession of the woodland of this interference, the elder warrantee was as surely ousted as it is true that two magnitudes cannot at the same time occupy the same space. Both could not have actual and adverse possession at the same time, and since the law has defined such acts as the younger warrantee exercised over the woodland to be actual possession, the title after twenty-one years must be considered as divested from the true owner and transferred to the intruder.

Counsel are not unaware of the strong terms in which such possession of woodland has been defined; but they say the rule has been predicated only of unoccupied tracts, whereof the rightful owner had but the constructive possession, and has never been applied to the woodland of a tract whereon the owner was actually resident. I have gone over all the cases in the books, and I believe this position of counsel to be correctly stated. In every case in which the customary use of adjacent woodland has been treated as actual possession, the original owner of the tract has not had the actual *possessio pedis* of any part of his survey. This must be admitted; but what of it? The law draws the possession of unoccupied land to the title, and when the courts define what kind of actual possession is necessary to oust the constructive possession of the owner, they are defining not a fiction but a fact—an actual, visible and tangible possession. Nothing short of such a possession shall oust the imaginary possession which the law imputes to the absent owner. But the force of the fact is not affected by the circumstance that he is a non-resident owner, or, if affected at all by that circumstance, it lessens it as compared with the force of the same fact when urged against a resident owner. An entry on the woodland of a non-resident is an act of less direct hostility than an entry on the woodland of a man who is at hand to repel it. In the one case it may fairly be presumed he is ignorant of the trespass—in the other he is defied to his very teeth. When repeated, and continued so long as to amount to actual possession, as against the non-resident,

[Ament's Executor *v.* Wolf.]

much more must it be accounted actual possession against him who has a chance to know that his rights are endangered, and if not asserted in due time, will be lost.

Whilst, therefore, it is true that this peculiar kind of possession of woodland has been set up, in all the adjudged cases, against non-resident owners, it seems to us that it applies *à fortiori* to resident owners. If it is a good defence against a title which may be ignorant of its danger, it is better against a title that knows it is questioned. A rule of law that should be so administered as to sacrifice the absent, but to protect him who was on the spot to protect himself, would not be remarkable for either wisdom or equity.

In the late excellent work of Mr. Price, on Limitations and Liens, at page 107, the result of a large number of authorities is stated in these words: "In case of interfering surveys and of actual possession by both parties of their respective tracts or parts of them, the law adjudges the possession of the unenclosed part of the interference to be in him who has the best right; and the statute does not operate." This is true, if adjacent woodland used as farmers ordinarily use such land, be not considered as " unenclosed," but otherwise it is not strictly accurate. Where owners of conflicting surveys are both in actual possession within their respective lines, but neither of them within the interference, the law undoubtedly adjudges the possession of the interference to be in him who had the right, and when the other enters upon the interference, he acquires title, under the statute, to no more than he actually occupies. All beyond his actual occupancy is still in the possession of him who has the right; but here comes back the question, what is actual occupancy? We hold that enclosing and cultivating part of the interference, and using the residue as adjacent woodland is customarily enjoyed, is actual possession of the whole. The possession which the law imputed to the real owner, be it actual or constructive, is ousted by such entry and occupancy, and after the statutory period the title is changed. The authorities cited by Mr. Price, when taken in connection with those which define the occupancy of woodland, will not be found inconsistent with this ruling.

Undoubtedly this woodland species of occupancy *is of late* growth in our law, but that it is well-rooted in reason and necessity, was so fully proved by the late Judge Kennedy, in the cases to which I have referred, that I am under no necessity to enter upon its justification. It has been found a salutary construction of the Statute of Limitations, and notwithstanding the able argument of counsel, we think this a proper case to which to apply it.

The judgment is accordingly affirmed.

Mr. Justice THOMPSON dissented, and read the following opinion :

The controversy in this case arises out of an interference of surveys. The plaintiff claims under an elder warrant and survey. The defendant under a junior warrant and survey never returned, including about forty acres of the plaintiff's survey, which he claims to hold by the Statute of Limitations.

In 1799 or 1800, the landlord of the defendant, the owner of the adjoining tract to that of the plaintiff, procured this interfering survey to be made, on the junior warrant, and cleared and cultivated within those lines about five acres, and continuously so occupied the same for a period of more than twenty-one years before suit brought.

Sixteen, or at most seventeen years after the claimant of this interference of forty acres entered into possession and made his improvement of five acres, Moorhead, under whom the plaintiff claims, entered by his tenant into possession of his tract, for which he had obtained a patent in 1797, upon his warrant and survey already mentioned, erected buildings, resided on it, clearing and cultivating land until 1830, when he sold it to the present plaintiff, who took immediate possession, and continued the residence and cultivation upon it ever since. In 1852, he brought this suit to recover the land in controversy. He claims now that by virtue of the title and entry into actual possession of the original owner, and continued by himself by clearing and cultivating land as already mentioned, and using the woodland as farmers usually do, for firewood, fences, &c., that the statute ceased to run in favor of the defendant from the moment of such entry and occupancy; and as twenty-one years had not run against his title at that time, his right of recovery is not affected by the Statute of Limitations That he and those under whom he claims were in actual possession of their entire tract up to its original boundaries.

On the other hand, the defendant claims that he was in the actual possession of all the land within the interference, by reason of clearing and cultivating five acres, and using the woodland for the incidental purposes connected with the possession.

Thus for four or perhaps five years before the statute had interposed a bar to a recovery, or conferred title on the defendant, both parties were in possession, and claiming possession to their respective boundaries by the same signs and indices of possession, viz : actual occupancy of part, and the use of the woodland as farmers usually do; the one an owner under a legal title derived from the Commonwealth—the other without title, a mere intruder.

It may as well be stated here, that the survey under, and to which the defendant claims, was unauthorized and void as such,

it being made on land already legally appropriated—the act of marking the trees, which constituted it, being a trespass—differing not a whit in character from a line made by the claimant himself or any other unauthorized person.

It may also be admitted that had the defendant's possession continued, as it had existed before the entry of the plaintiff, for the full period of twenty-one years, without possession being taken by the legal owner, the statute would have operated as a bar. At an early period in our land controversies, it was held that nothing but an actual *pedis possessio*, by cultivation, or enclosure and cultivation, would oust the legal seisin of the owner. In metaphoric language, the intruder could only hold the land he stood upon, unless he entered by color of title. *Clugage* v. *Duncan,* 1 S. & R. 111; *Miller* v. *Shaw,* 7 S. & R., and other cases. Afterwards, and by degrees, this doctrine was modified, and the distinction between color of title and no title at all disappeared where the entry was made as an improver, with adopted or marked boundaries. *Cresswell* v. *Altemus,* 7 W. 580; *Lawrence* v. *Hunter,* 9 W. 64.

But the doctrine stopped here, unless, in this case, we should incite it into action by determining that both the legal and actual seisin are not sufficient to hold the intruder where the fathers and sages of the law held him, as against the legal seisin, namely, to the ground upon which he stood. No case can be found as a precedent for the doctrine, that against both title and possession he can hold more.

What effect had the demarcation of boundary, unauthorized as it was, against the plaintiff's entry under his legal title? Or perhaps, rather, what effect had his entry under his title upon such a possession before the statute had closed in upon it? I think it would strike most minds that it gave him, as incidental to ownership, the *actual* possession of all that he was not actually excluded from. That whatever was not covered by an adverse *pedis possessio* was drawn into his actual possession by virtue of his actual occupancy under his legal title. So thought and so said as sound a lawyer and judge as ever sat on this bench, in delivering the opinion of the whole Court in *Royer* v. *Benlow,* 10 S. & R. 300. "A man," says Chief Justice Tilghman, in that case, "who enters into a tract of land with title, is immediately, *by construction of law, in the actual possession of the whole tract.*" As a consequence of this principle, which cannot be doubted, unless we disregard the acknowledged effect of an entry under title in tolling the Statute of Limitations, it follows that of whatever was not in actual, adverse, visible, notorious, distinct and hostile possession by the adverse claimant, the owner became immediately, by the act of entry, actually seised.

Now was this line, unauthorized as is conceded, or rather not

denied, notice of the adverse, actual, notorious and hostile kind that settled definitions require, to constitute possession which would ripen into title against the owner also in possession ? In *Hole* v. *Rittenhouse*, 1 Casey, 491, this inquiry is answered in clear and emphatic language by Chief Justice Lewis. "Every argument," observes that learned Judge, "tending to show that an unauthorized survey of land, already appropriated, does not disseise the legal owner, or give the wrong-doer actual possession, applies with equal force to a survey made without authority by a deputy surveyor, as to one made by a private individual. Both are alike unauthorized, both are alike trespasses. Neither gives actual, visible and notorious possession to the wrong-doer. Neither gives the owner notice that his right to the property is invaded." If this doctrine is to be regarded, it proves that it was no exclusion of the legal owner in possession from the land within the demarcation. If so, what follows ? The doctrine already cited, that " a man who enters into a tract of land with title, is immediately, by construction of law, in the actual possession of the whole tract."

If the owner then be in actual possession of the whole tract by virtue of title, and actual occupancy, and not bound to notice line-marks as indicating actual adverse possession, the statute not having run before his entry, and his title "not being invaded thereby," how can it be conceived that the intruder is in actual, adverse possession by them ? Can there be two actual, adverse possessions at the same time of the same land ? The law settles this at once by giving such a vacant possession an actual existence in the occupier with title. And this is just what was determined in *Royer* v. *Benlow* already cited. If both possessions are alike, as they were here, then the rule stated in *Miller* v. *Shaw*, 7 S. & R. 129, settles the difficulty. "There cannot," says Duncan, J., "be two conflicting constructive possessions, one in the owner, and the other in the trespasser. The right always draws to it the possession, and it there remains until seized by the wrong-doer, whose possession is strictly *possessio pedis.*" This was said in a case in which legal seisin only existed, but I have already shown that the doctrine is precisely the same, notwithstanding its modification, where there is actual seisin under a legal title.

I have said there could not be two actual adverse possessions of the same land at the same time, and the case cited shows that there cannot be two conflicting constructive possessions at one and the same time. When this is the apparent position of the possessions, the effect of the rule that the legal owner is in possession under his title, is, that he is in the *actual possession* of the entire tract to the exclusion of all others who have not a superior right to possession.

If this were not so, the owner would never be secure in his title.

[Ament's Executor *v*. Wolf.]

An adjoining owner might occupy and cultivate a field of one, two, or three acres, the amount is not very material, within the lines of his neighbor's land, on which he may have at some time marked trees enough to constitute a line across his tract, and he may, too, have occasionally cut a stick or two of timber within the boundary and actually have the land assessed, and paid the taxes on it for years without the knowledge of the legal owner ; can it be, that the owner, while regarding his dominion as perfect, and unaware of the line, and disregarding the trespasses rather than to sue for an insignificant tort, is, in time, to lose his land under such circumstances ? It cannot be, because the law has made his possession to the whole actual, excepting as to that from which he is actually ousted, by an actual, adverse, notorious, visible and hostile possession.

The case supposed, is precisely in nature and character the possession of the defendant. The extent and degree differ but little. His line was as unauthorized as if marked by himself, and his cultivation but five acres. Whether he paid taxes or not for it we do not know, but from the nature of things we may well presume that the holder of the legal title paid the taxes on his entire tract, including the land in dispute, for if he had not, it was too important an item of evidence to have been overlooked by defendant, as showing an admitted ouster from the premises and acquiesced in by the plaintiff, and would have, with the occupancy of a part, been conclusive evidence against him for the whole, after twenty-one years. So that there was no shadow of dereliction of possession, or evidence of admitted ouster against him.

To hold that as against the owner in possession by such a line, and possession within it as the defendant held, would require an entry within it to stop the running of the statute, and this would follow as a legal necessity if a title could be so obtained under the statute, is not only to disregard the reason of the thing, but the decisions of this court, and ever recognized as a rule of property on this point. In *Royer* v. *Benlow, supra*, Tilghman, C. J., says : " The unenclosed woodland is claimed by two persons : the warrantee who has the right, and the improver who has no right. In such case the law adjudges the possession to be in him who has the right, because it cannot be in two persons claiming adversely at the same time. The cutting of wood by the improver is not exclusive of the possession, which was in the warrantee from the time of the survey. The law does not oblige the warrantee to cut wood, in order to continue his possession. He might have cut it, if he had chosen, and he is to be considered, with regard to the improver, in the same situation as if he did cut it." This is in point, unless the doctrine is unsound that actual occupancy under a legal title does stand now just where the earlier

[Ament's Executor *v.* Wolf.]

cases said legal seisin alone stood, in regard to the possession of an intruder, which I think cannot be controverted.

It follows, then, as a necessary result from these principles, that the possession of the warrantee. in this case restored him to actual possession up to his entire boundary, excepting as to the five acres. It was, therefore, not necessary to make entry on the woodland within the defendant's line, on which he had occasionally cut timber for fences and the like, for it was in the owner by virtue of his legal title and accompanying occupancy. The statute ceased to run as to that, from the moment his actual possession began. From that moment, the defendant's possession was not exclusive of the owner's possession; and without this important element the statute could not protect him. This being so, the right of the respective claimants must depend upon the superiority of title.

From experience in a section of country where interfering lines often produced controversies, I had supposed the question settled. and at rest, that when such interferences existed the statute did not run in favor of either claimant, when both were in possession, excepting to the extent of actual enclosure or cultivation. I felt some surprise to hear it doubted; and my surprise was not much abated by being told, that the contrary doctrine was sustained on the ground of *actual possession* by the improver to all within his lines, whether enclosed or not. After twenty-one years this would be so, where there was no actual possession by the owner, because the statute, as interpreted, has fixed this period as barring the right of entry by the plaintiff. But unless this woodland occupancy is actual, as much so as the enclosure which is claimed, by the very reliance on it, the statute will not aid the improver. I maintain that his possession is but constructive, and is gone, by the actual possession of the true owner superseding it. The cases bear me out in this position, as to the character of the possession.

In *Royer* v. *Benlow*, it is said: " He who enters without title has no constructive possession, but is limited to the spot actually occupied," clearly implying what the nature of the possession would be outside of such enclosure.

In *Hochenberg* v. *Snyder*, 2 W. & S. 240, the court say, that to enable an improver to hold a part of an original warrant, " he must show in some way that his claim and constructive possession embrace so much."

In *Sailor* v. *Hertzog*, 10 Barr, 296, payment of taxes by the intruder " raises a presumption of ouster of the whole tract, and extends, by construction, his adverse possession to the boundaries of the survey." They also said the same in *M'Call* v. *Greely*, 3 W. 69.

In *Wright* v. *Greer*, 9 W. 172, Gibson, C. J., asks, " if a settler

on appropriated land should not be deemed in constructive possession of woodland used by him as such, why shall a non-resident?"

In *Clark* v. *Dugan*, 2 J. 87, it is said: "An assessment on a warranted tract for a disseising settler of a less quantity than is called for by the warrant and survey, if made by his procurement, or even with his knowledge and acquiescence, will lose him his constructive possession by detaching it from the landmarks that had sustained it." See also Price on Lim. 107.

These and many other cases that might be cited, show what is the possession of the improver or intruder outside of his enclosure. The language of the law, as well as our appreciative faculties, unite in calling it CONSTRUCTIVE. If this be so, and the law gives the owner, as I have shown from authority it does, on entering under his legal title, the actual possession of the whole tract, then was the defendant's possession as against the plaintiff, ever after the entry and occupancy of the owner, valueless as giving title under the statute.

The cases relied on by the defendant in error, as sustaining the idea of actual possession, I think fall far short of the mark. The law is well settled, I concede, that as against the legal seisin merely of the owner, an occupier by residence or cultivation on a tract of land, has that kind of possession which will displace the constructive possession incident to ownership merely; and this I have alluded to as a modification of the old rule. But we are treating of a case of a very different kind, one in which there is both actual and legal seisin; and in this kind of case nothing but actual, adverse possession, occupancy by enclosure or cultivation of the ground, will do it.

*Thompson* v. *Milford*, 7 Watts, 442, was a case of interference. The defendant whose title under the statute was sustained in running the boundaries of his tract, included twelve acres of the plaintiff's lot, both being undrawn donation tracts, and cleared six acres of the twelve more than twenty-one years before suit brought, and continued the actual occupancy of it. He held the cleared land as well as the woodland by virtue of the statute, and why? Kennedy, J., in the opinion, gives us the true reason. He says, " The line, as marked by him (the defendant,) between him and the plaintiff below, according to the evidence, was known to *the latter, and respected by him as the boundary of the defendant below, and all the land lying on that side of it, where the latter resided, as being in his exclusive possession.*" Here is the case of an admitted ouster, and a circumscription of the plaintiff's boundary short of it. I think no lawyer will doubt the propriety of the decision on such a state of facts. The learned judge in another portion of the case says, "for although the plaintiff below claimed the whole of tract No. 274, yet until shortly before the

commencement of this action, he *expressly*, according to the evidence, *confined* the *limit* of his claim, as also that of his possession, to the *line run and marked by the defendant below, excluding the land in dispute from his possession, and thus leaving, if not giving it to the defendant below.*" He had no possession by reason of his own exclusion of the land, and his admitted ouster for that period left the statute full room to operate. All things else in the case outside of this element of recovery, which was conclusive in the case, were dicta only. The case does not militate against the principle I claim as the law, that the intruder's possession of woodland is not actual. Nor is the case of *Cresswell* v. *Altemus*, 7 W. 580, any authority on the point of inquiry. It was not a case of conflict with actual, but with legal possession. The claim was of the whole tract by the intruder, which he held after twenty-one years, the plaintiff neither entering nor even paying taxes for the whole period. His right of entry was gone by the terms of the statute after so long a period. Such also was the case of *Lawrence* v. *Hunter*, 9 W. 64.

The case of *Alden* v. *Grove*, 6 Harris, 383, is the next to be noticed, and there, (as in *Thompson* v. *Milford*,) was clear evidence of admission by the owner of the warrant, under whom the plaintiff claimed, that he did not own or claim the land, the subject of dispute, and that he bounded his claim and possession by a brush fence, on or near the line of defendant's claim. Here was an enclosure, as well as an admission against the plaintiff, that the defendant had the exclusive possession, and that he had it not. On this ground it was ruled in the court below, and affirmed in this court. The remarks of the judge in delivering the opinion of this court about the use of woodland, in connection with actual occupancy, were all right in their general bearing, but the principle did not become necessary to the decision of that case.

The effect of conflicting possessions then, leaves cases like the present to be determined upon the rights, or rather titles of the contestants, the Statute of Limitations having no operation whatever as between them. There being no exclusive possession in either party, both being occupiers of a part by enclosure or cultivation, the woodland stands without and clear of the disseisin necessary to be the foundation, as well as a continuing element in acquiring title by the statute; the right determines to whom this belongs.

In *Broms* v. *Lyons*, 2 S. & R. 439, it is said "where there is no interference of surveys, possession of part is possession of the whole, but where surveys interfere the act has no operation against him who has the right, except his opponent takes an adverse and exclusive possession." So in *Hoey* v. *Furman*, 1 Barr, 205; *Clugage* v. *Duncan*, 1 S. & R. 111. In *Hatch* v. *Smith*, 4 Barr, 109, Rogers, J., says, "it has been repeatedly ruled that when

[Ament's Executor *v.* Wolf.]

there are interfering lines, the Statute of Limitations only protects to the extent actually improved." In *Waggener* v. *Hastings*, is the same doctrine.  Indeed the principle stands confessed by the effort to make the statute operate by denominating the possession of the woodland as an actual, instead of constructive possession, which I think I have shown should not be done.  Both parties were in possession before the statute had run in this case. The entry of the plaintiff five years before the bar of the statute, was complete as against him,—it ceased running,—and the title must thereafter depend upon the best title.  To affirm this judgment, in my opinion, is to overrule this doctrine, which, I think, would be fraught with many and great evils.  It is a new step to facilitate the acquisition of titles by trespasses and wrongs.  I would not take it, unless I perceived in it a controlling necessity for so doing to advance justice and equity ; I have been unable thus far, to perceive this.

I claim as the result of the investigation:

1. That the defendant's possession of the woodland was constructive and not actual.

2. That the plaintiff's possession under his legal title, was *actual* to his entire tract, excepting only to the portion enclosed and cultivated by the defendant.

3. As a result of this, that from the time of entry by the plaintiff under his title, the defendant's possession ceased to be adverse, and he cannot hold under the statute, to any greater extent than that of his enclosure.

4. That as the statute did not confer a right on the defendant to hold the land in controversy, he will be obliged to yield to plaintiff's title unless he can show a better.

5. In case of interfering surveys the statute does not apply, excepting as to land actually occupied, and as the defendant's title was not complete under it when the plaintiff took possession, the parties must stand or fall by their legal rights to all not enclosed and occupied adversely for twenty-one years.

I am of opinion that the judgment in this case should be reversed, and a new trial awarded.